[Crim. No. 85.  Second Appellate District.—June 26, 1908.]

## Ex Parte J. L. MURPHY, on Habeas Corpus.

MUNICIPAL ORDINANCE—SUPPRESSION OF PUBLIC BILLIARD AND POOL ROOMS—POLICE POWER UNDER CONSTITUTION.—The legislative body of a municipal corporation has police power under section 11 of article XI of the constitution to pass a municipal ordinance suppressing the maintenance of public billiard-rooms and poolrooms for hire or public use, within the limits of the municipality, provided the same does not conflict with any general law.  Subject to the proviso, the power of the city is as broad as that of the legislature itself.

ID.—NUISANCE—MENACE TO PUBLIC MORALS.—Although the business of conducting a public hall or billiard-room is not *per se* a nuisance; yet the same may, by reason of its environment or conditions existing in some communities, constitute a menace, and danger to the morals and well-being of the citizens thereof; and it is therefore a subject of regulation or absolute prohibition.

ID.—RIGHT OF CITY—QUESTION OF FACT—CONCLUSIVENESS OF FINDING. The right of the city to prohibit such rooms depends upon a question of fact, the existence of which it is conclusively presumed that its legislative board has properly passed upon; and the courts cannot go behind its finding.

ID.—REASONABLE RESTRICTIONS AND EXCEPTIONS.—When all are alike amenable to the law prohibiting public billiard and pool rooms for hire or public use, reasonable exceptions in favor of private billiard-rooms, by the owners of buildings, and in favor of the exclusive use thereof in hotels for *bona fide* guests only, do not create a monopoly of the business prohibited, and are reasonable classifications.  A law is general which applies to all of an appropriate class.

ID.—DISCRETION OF BOARD AS TO PERMITS TO HOTELS.—The ordinance vesting discretion in the legislative board as to granting permits to hotels, and to revoke the same for a violation of conditions, does not render the ordinance invalid.  Since the governing power can prohibit altogether, it may impose any restrictions deemed necessary and proper as a condition of permits, in properly excepted cases.

ID.—HABEAS CORPUS.—Where the petitioner for a writ of *habeas corpus* brings himself within no excepted case, he cannot be affected thereby, and being only within the purview of the prohibitory provision of the ordinance, the constitutionality of which must be upheld, his petition for the writ must be denied.

PETITION for writ of *habeas corpus* to the marshal of the City of South Pasadena.

The facts are stated in the opinion of the court.

Lawler, Allen, Van Dyke & Jutten, and H. C. Milsap, for Petitioner.

John E. Carson, City Attorney, for Respondent.

SHAW, J.—Application for a writ of *habeas corpus*.

Ordinance No. 262, duly adopted by the city of South Pasadena, and entitled, "An Ordinance for police regulation, relating to billiard halls, pool rooms, and places where billiard and pool tables are kept for hire or public use in the city of South Pasadena," provides:

"The Board of Trustees of the City of South Pasadena do ordain as follows:

"Section 1. It shall be, and is hereby made unlawful for any person or persons, individually or by association with others, either as owner, principal, clerk, agent, servant or employee, to establish, open, keep, carry on, or assist in carrying on, or maintain, or assist in maintaining any billiard hall, or pool room, or other place in the City of South Pasadena, where any billiard, pool, or combination billiard and pool table, or tables, is or are kept for hire or public use, and any person or persons opening, keeping, carrying on, or assisting in carrying on, maintaining, or assisting in maintaining, any such place, herein specified, in said City of South Pasadena, shall be guilty of a misdemeanor, and every act in violation of this section shall separately, or for each day of its continuance, be deemed a separate offense.

"Provided, however, that nothing in this ordinance shall be construed or understood as prohibiting the owner, manager or lessee of any hotel, universally recognized as a hotel, using a general register for guests, and having twenty-five bedrooms and upward, furnished as such, from keeping and maintaining any billiard, pool, or combination billiard and pool table, or tables, for the use of regular guests only of said hotel, in a room provided for that purpose in the building in which said hotel is located, and at no other place, on receiv-

ing a permit so to do from the Board of Trustees of the City of South Pasadena. Application for such permits shall be in writing, and filed with the Board of Trustees at least five days before the same is granted. If, on investigation, said Board finds the hotel for which such permit is desired, equipped and conducted as herein specified, it may, in its discretion, grant and issue such permit, without charge, and for such time as desired by the applicant, but in no event to extend beyond the date of the next succeeding municipal election; provided, if said Board of Trustees shall at any time become satisfied that any person to whom any such permit is granted, his clerk, agent, or employee, has permitted any person other than a regular guest of said hotel, or any person who has not in good faith become a regular guest of said hotel, or is guilty of a violation of any provision of this ordinance, they shall cancel, revoke, and withdraw such permit and all rights thereunder, and no other permit shall thereafter be granted to said person.''

On January 18, 1908, petitioner was arrested upon a complaint which charged "that on the 17th day of January, 1908, at said City of South Pasadena, in the county of Los Angeles, State of California, the crime of violating Ordinance No. 262 of said City of South Pasadena was committed by J. L. Murphy, who at the time and place last aforesaid, did willfully and unlawfully engage in, establish, open, keep, carry on and assist in carrying on, maintain and assist in maintaining, a billiard hall and pool room and place, by then and there keeping billiard, pool, and combination billiard and pool tables for hire and for public use.'' An answer was filed controverting certain allegations of the petition regarding the manner in which the business was conducted by petitioner, the character of those who frequent the place, and the fact that the conduct of the business was disassociated from any practice tending to encourage profligacy or injuriously affect the good morals of the community. Inasmuch, however, as, according to our view, the validity of the ordinance is unaffected by such alleged facts, conceding them to be true, it is therefore unnecessary to discuss the issues thus raised.

The sole question relates to the validity of the ordinance, disassociated from any consideration of extrinsic questions affecting its reasonableness. Petitioner contends that the or-

dinance is unconstitutional and void for the reasons: 1st. That poolrooms are not a nuisance *per se;* 2d. That it is not within the power conferred upon municipalities by section 11, article XI of the constitution of the state of California; 3d. That it vests arbitrary power in the board of trustees; and, 4th. That it is special and class legislation in that it confers privileges and immunities upon certain citizens which it denies to others, thus creating a monopoly in the one class.

An inspection of the ordinance makes it apparent that it is not a measure adopted for the purpose of raising revenue; hence, not an exercise of the power given cities of the sixth class, to which South Pasadena belongs, under the provisions of subdivision 10 of section 862 of the municipal corporation act [Stats. 1883, p. 270], which authorizes such cities to "license, for the purpose of revenue and regulation, all and every kind of business authorized by law, . . . and lawful games carried on therein. . . ." Its purpose is not to license, but to prohibit. (*Merced Co.* v. *Helm,* 102 Cal. 159, [36 Pac. 399].) Authority to enact this ordinance, if it exists at all, is found in section 11, article XI of the constitution of the state of California, which provides: "Any county, city, town, or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." Under this provision the city's power to legislate upon all matters included within its terms is limited only by its territorial boundaries, provided that such legislation shall not conflict with general laws. As said in *Odd Fellows' Cem. Assn.* v. *San Francisco,* 140 Cal. 226, [73 Pac. 987], subject to these limitations, the power of the city "is as broad as that of the legislature itself." There can be no doubt that under this constitutional grant municipalities may, in proper cases, exercise the power therein conferred to the extent of prohibiting the carrying on of a business altogether. Illustrations of the exercise of such power are seen in ordinances for the prohibition of the sale of intoxicating liquors, the suppression of gambling, and bawdy-houses. (*Ex parte Shrader,* 33 Cal. 279; *Ex parte Tuttle,* 91 Cal. 589, [27 Pac. 933]; *Odd Fellows' Cem. Assn. et al.* v. *San Francisco et al.,* 140 Cal. 226, [73 Pac. 987]; *Merced Co.* v. *Helm,* 102 Cal. 159, [36 Pac. 399].)

We may concede at the outset that the business of conducting a public billiard-hall and poolroom is not *per se* a nuisance. In the case of *Ex parte Meyers,* 7 Cal. App. 528, [94 Pac. 870], this court, in considering the validity of "an ordinance prohibiting minors from visiting . . . public billiard and pool rooms, . . ." said: "That a billiard hall is immoral *per se* because it is public will hardly be contended by any one." Petitioner insists that unless the business is held to be immoral, or a nuisance *per se,* it is not subject to the exercise of the city's police power to the extent that it may be prohibited. His contention is that billiard-halls and poolrooms fall within that class of cases the conduct of which might, by reason of the character of the business, prove obnoxious or injurious to health, or affect the comfort and welfare of others, such as laundries, tanneries, and soap factories; that as to those the power of a municipality is to regulate only. This is true as to that class of business recognized as necessary and useful employments, but the character of which renders their operation obnoxious to the health, welfare or comfort of others in the community. The question of the reasonableness of ordinances regulating the conduct of such business, and excluding their operation from or confining it to certain prescribed limits, as well as the uniform operation of the same, is always a proper subject for judicial inquiry. Such avocations being necessary and useful, the citizen under proper restrictions has a fundamental right to engage therein. (*Ex parte Drexel,* 147 Cal. 763, [82 Pac. 429].) When dealing with a nonuseful calling, the power of the municipality is much broader. The citizen possesses no inherent right to conduct for profit a public place intended purely for the amusement of its patrons, the tendency of which is immoral or vicious. In all such cases the question arises, What is the effect of the conduct of the business upon the morals and public welfare of the community? "That a public pool and billiard hall," says petitioner's counsel, "is a proper subject for police regulation is not denied," and concedes that "stringent rules undoubtedly may be enacted to regulate the said business." Referring again to the case of *Ex parte Meyers,* 7 Cal. App. 528, [94 Pac. 870], wherein this court held that a poolroom was not *per se* a nuisance, it was said : "That it may become such by the presence of the

professional billiardist and gambler ready to fleece the unwary and to inculcate the gambling habit in the youth of the city must be admitted.'' In the case of *Tarkio* v. *Cook*, 120 Mo. 1, [41 Am. St. Rep. 678, 25 S. W. 202], it is said: ''Public billiard halls are regarded by many as vicious in their tendencies, leading to idleness, gambling and other vices.'' In *Goytino* v. *McAleer*, 4 Cal. App. 655, [88 Pac. 991]    Mr. Justice Allen, expressing the views of this court, said: ''Nor can it be said that as ordinarily, if not invariably, conducted such business might not within the limits of reasonable probability be attended with uses injurious to the public peace and morals.'' ''Any practice or business the tendency of which as shown by experience is to weaken or corrupt the morals of those who follow it, or to encourage idleness instead of habits of industry, is a legitimate subject for regulation or prohibition.'' (*Ex parte Tuttle*, 91 Cal. 589, [27 Pac. 933]; *Ex parte Lacey*, 108 Cal. 326, [49 Am. St. Rep. 93, 41 Pac. 411]; *State v. Thompson*, 160 Mo. 333, [83 Am. St. Rep. 468, 60 S. W. 1077].) It thus appears that a public billiard-hall and poolroom may, by reason of its environment or conditions existing in some communities, constitute a menace and danger to the morals and well-being of the citizens thereof; and it is, therefore, a subject for regulation or absolute prohibition, notwithstanding the fact that it is not a nuisance *per se*, the right of the city depending upon a question of fact the existence of which it is conclusively presumed the board of trustees has properly passed upon, and the courts cannot go behind such finding. (*Ex parte Shrader*, 33 Cal. 279.) Regulation measures, not extending to the stringency of prohibition, might afford adequate protection in some communities, while in others conditions might exist by reason of which the public welfare demanded the absolute suppression of the business. In all cases, however, the extent to which the power shall be exercised is a matter for the legislative body of the municipality to determine. The power of the legislative body of the state, under its police power, to enact general laws prohibiting poolrooms and billiard-halls cannot be questioned, and it must follow, in the absence of such general laws, that the police power of a municipality, within its territorial limits, under section 11 of article XI of the constitution, is coextensive with that of the state.

Cases from other jurisdictions cited by petitioner in support of the proposition that the power conferred by said section 11, article XI, extends only to the right to regulate, are inapplicable to the case at bar, for the reason that the questions involved were under charters containing special and limited grants as to the exercise of police power.

Petitioner insists that the ordinance is obnoxious by reason of its being special and class legislation, in that its provisions do not apply to the proprietors of hotels having twenty-five or more furnished bedrooms and using a general register for guests. There is no merit in this contention. The ordinance is directed at those persons who keep billiard-halls and poolrooms for hire or public use, and its provisions apply to all alike falling within this class. It prohibits every one from engaging in such business. The provisions do not apply to the individual who keeps a pool-table in his house for the use of himself and guests, nor to the hotel-keeper who maintains tables for use of *bona fide* guests only. In neither case can it be said to be public, nor that it creates in either a monopoly of the business. All are alike amenable to the law prohibiting them from conducting such place for hire or public use.

Even accepting petitioner's theory as to the effect and operation of the ordinance, there is no force in the objection. As we have seen, the city may prohibit altogether, "and if the governing power can prohibit a thing altogether, it can impose such conditions upon its existence as it pleases." (*Ex parte Christensen*, 85 Cal. 208, [24 Pac. 747].) And, as said in *Ex parte Kidd*, 5 Cal. App. 159, [89 Pac. 987] : "Let the correctness of his (petitioner's) conclusions be assumed, and we have a case where the law-making power is regulating a business the tendency of which is injurious to the public morals, safety and welfare." It is for the legislative body to determine whether the business shall exist at all, and, if so, under what restrictions. It is quite apparent that keeping billiard and pool tables in a hotel for the exclusive use of its guests would be to a very great extent, if not altogether, free from the resultant evils and vicious tendencies connected with the public poolroom. If there be a diversity in such legislation, this fact suggests a rational reason for such classification. Counsel for petitioner has cited many authorities in

support of his contention. These citations, almost without exception, relate to the operation of laws licensing or regulating the conduct of the ordinary and useful avocations of life; that is, those the conduct of which is not recognized as having injurious tendencies. Such cases are wholly inapplicable to the case at bar, for the reason that the inherent and fundamental right of the citizen to conduct the business in the one class of cases' is wholly wanting in the other. In the case of *In re Zhizhuzza,* 147 Cal. 328, [81 Pac. 955], Mr. Justice Van Dyke, in discussing the uniform operation of laws, said: "There is no constitutional provision which expressly requires the uniform operation of municipal ordinances. Nevertheless, where they unjustly discriminate they are sometimes declared unreasonable and therefore void. A law is general which applies to all of a class—the classification being a proper one, and the requirement of the constitutional provision in question is satisfied if it applies to all the class alike. The word 'uniform' in the constitution does not mean universal. The section intends simply that the effect of the general laws shall be the same to and upon all persons who stand in the same relation to the law—that is, all the facts of whose cases are substantially the same." In addition to the cases already cited, see *Sonora* v. *Curtin,* 137 Cal. 583, [70 Pac. 674]; *California Reduction Co.* v. *Sanitary Reduction Works,* 126 Fed. 29, [61 C. C. A. 91]; *Ex parte Koser,* 60 Cal. 177; *Ex parte Drexel,* 147 Cal. 763, [82 Pac. 429]; *Crowley* v. *Christensen,* 137 U. S. 86, [11 Sup. Ct. Rep. 13].

That portion of the ordinance relating to hotels keeping billiard and pool tables provides that the board of trustees may, in its discretion, grant permits therefor to such hotels. It is contended that the ordinance is void by reason of the fact that it vests an arbitrary power in the board. Conceding this to be true, nevertheless, since the governing power can prohibit altogether, it may impose any restrictions deemed proper and necessary as a condition of granting permits to conduct such business. In discussing this point in his opinion, the late Judge Smith of the superior court of Los Angeles county very properly stated, in denying the application of petitioner for a similar writ: "But we have seen that the conducting of a pool room is not a useful occupation and does not come within the purview of any of the authorities

quoted by the petitioner upon his proposition. The law is well settled in this state, as has been shown by the authorities already cited, that where a business is not a useful occupation, such as conducting a saloon, and many kindred places, the supreme court has always upheld the power that has been vested in a board or in a person to say whether such person shall have a license or not. Consequently, the many authorities cited by petitioner which involve the right to conduct lawful and useful businesses, such as referred to in the Yick Wo Case, 118 U. S. 356, [6 Sup. Ct. Rep. 1064], which was a laundry case, *State* v. *Mahner,* 43 La. Ann. 496, [9 South. 480], which was a dairy case, and other cases of similar character, have no application to the case at bar.'' Moreover, petitioner does not bring himself within the class who could be affected by the exercise of such arbitrary discretion, and hence is not affected thereby. (*Ex parte Kidd,* 5 Cal. App. 159, [89 Pac. 987].)

We find no valid objection to the constitutionality of the ordinance. The writ is denied, and petitioner is remanded to the custody of the city marshal.

Allen, P. J., and Taggart, J., concurred.